(No. 28102.—<span style="background:black">      </span>

E. E. BARNETT, Appellee, *vs.* THE COUNTY OF COOK *et al.,* Appellants.

*Opinion filed November 22, 1944.*

THOMAS J. COURTNEY, State's Attorney, (WILLIAM J. TUOHY, JOSEPH P. BURKE, FRANCIS S. CLAMITZ, and FRED W. KLOMAN, of counsel,) all of Chicago, for appellants.

PAUL FARTHING, of Belleville, HOLT & KEARNEY, BARR, BARR & CORCORAN, ADELBERT BROWN, and GEORGE P. FOSTER, (ROBERT N. HOLT, and MARSHALL V. KEARNEY, of counsel,) all of Chicago, for appellee.

Per CURIAM: The plaintiff, E. E. Barnett, a qualified taxpayer, filed a complaint in the circuit court of Cook county against the defendants, County of Cook, the board of commissioners of Cook county, its president, the county

clerk and the county treasurer, seeking to restrain them from entering into a contract for the publication of a "Notice of Proceedings to adjudicate tax levies" for the year 1944 and paying any of the public revenues for this purpose conformably to "An act concerning taxes of municipal and quasi municipal corporations and taxing bodies (other than the State of Illinois) containing 500,000 or more inhabitants." (Ill. Rev. Stat. 1943, chap. 120, par. 831-841.) By her action, plaintiff challenged the constitutional validity of the statute upon the grounds that it violates sections 2 and 19 of article II, article III, section 22 of article IV, section 29 of article VI, section 4 of article IX, and section 12 of article X of our constitution and the fourteenth amendment to the Federal constitution. Defendants interposed a motion to dismiss the complaint, averring its validity and constitutionality in all respects. Their motion to dismiss was overruled, defendants elected to abide by their pleading, and a decree was entered finding the act assailed unconstitutional and permanently restraining defendants from entering into a contract for the publication of any notices prescribed by the statute and from expending any public revenue required by its provisions. Defendants prosecute this appeal, the validity of a statute and the construction of the constitution being involved.

A similar statute enacted in 1937 violated constitutional guaranties of due process of law. (*Griffin* v. *County of Cook,* 369 Ill. 380.) A second act, similar to the statute of 1937 and to the act of 1943, did not afford due process of law. (*Barnett* v. *County of Cook,* 373 Ill. 516.) The purpose of the act now before us, as well as its two predecessors, is to provide for the adjudication of tax rates of the six taxing bodies in the State, other than the State of Illinois, having a population of more than 500,000. These six districts are the county of Cook, the Forest Preserve District of Cook county, the city of Chicago, the board of

education of the city, the Sanitary District of Chicago, and the Chicago Park District. Jurisdiction of the proceedings for adjudication of annual tax levies, pursuant to the act, is vested in the county courts of the State by section 2. The next section ordains that the taxing bodies enumerated shall, on or before the second day of April, file a certified copy of their annual tax levy ordinances with the county clerk. By the fourth section, it is provided that, on the fifth day of April, the attorney for each taxing body shall prepare for, and file in the county court in the name of, the county clerk a petition for the adjudication of the tax levies contained in the tax levy ordinance, a copy of which is required to be attached to, and made a part of, the petition. This petition shall set forth the percentage of loss and cost of collection which the clerk proposes to add where no levies for this purpose have been made by the taxing district and where such addition is permitted by law. Section 4 provides, further, that the petition shall designate a return day which shall be the thirtieth day of April or, if the day named be a Sunday, the succeeding Monday. On April 10, the county clerk is directed to cause a notice to be published in some secular newspaper of general circulation published in the territorial limits of the municipal corporation, *quasi*-municipal corporation or taxing body whose annual tax levies are sought to be adjudicated. The form of "Notice of proceedings to adjudicate tax levies" is addressed "To All Taxpayers Concerned" and to the particular taxing district. It announces that all persons owning or interested in real or personal property which may be affected by taxes based upon the tax levies sought to be adjudicated may file objections in writing thereto with the clerk of the court at any time prior to April 30. A new paragraph, representing an attempt to satisfy the constitutional objections rendering the two previous acts invalid, declares that, at least fifteen days before the specified return day, the county

clerk shall send a notice by mail to the taxpayers in the territorial limits of the taxing body whose annual tax levies are being adjudicated. This notice shall be the same as the publication previously described. The expense of the publication and the mailing of the notice shall be paid from the county treasury. Section 5, as in the act of 1937, makes provision for the filing of written objections prior to April 30 by any person or corporation owning or interested in any real or personal property which may be affected by taxes based upon any of the tax levies included in the petition. These objections must specify in detail the grounds of illegality urged against any tax levy or any portion thereof against the percentage of loss and cost of collection which the county clerk proposes to add. Omitted is the provision in the acts of 1937 and 1939 that any objector desiring to raise any question concerning the amount of the maximum tax rate for any taxing body, or whether any levy is within or without a tax rate limit, shall likewise set forth in his written objections facts in support of his contention. Section 6 provides for a summary hearing upon any objections to the tax levy ordinances. No error or informality in making any tax levy or in certifying it to the county clerk, not affecting the substantial justice of the levy itself, the sixth section states, shall in any manner vitiate or avoid the levy, and where an error or informality in a levy or certification can be corrected by amendment, "(including objectionable specifications or failure to specify the objects and purposes of any tax levy,)" made prior to the entry of an order of confirmation, such amendment may be made by the proper officer of the taxing body, and the ordinances or certification thereof, respectively, as amended, shall upon proof of such amendment being made prior to the entry of an order of adjudication, be of like force and effect as though originally adopted and certified in the amended form. The seventh section declares that, upon the disposition of all

objections to the tax levies described in the petition, an order in accordance with such determinations shall be entered substantially in the form set forth. The eighth section provides. for appeals by objectors and, also, by any taxing body whose levy is affected by the order of the county court. Section 9 prescribes that the order adjudicating tax levies shall be conclusive as to the validity or invalidity of all such tax levies, and that no tax levy thereby approved shall thereafter be questioned by objections to the county collector's application for judgment and order of sale against real estate for delinquent taxes. This section provides, however, that no taxpayer shall be precluded from raising any and all defenses in an action *in personam* for the collection of taxes. The ninth section is narrower than the corresponding sections of the earlier acts, the distinguishing feature being the addition of the proviso in the act of 1943.

Plaintiff contends that the act transcends constitutional safeguards by failing, among other things, to provide for due notice and, accordingly, denies due process of law. Upon the previous appeals we have recurred to familiar principles of constitutional law. The term "due process of law" does not admit of precise definition. (*Parks* v. *Libbey-Owens-Ford Glass Co.* 360 Ill. 130.) In the *Griffin case,* we observed that due process of law requires notice, actual or constructive, to the defendant and an opportunity to be heard in the protection and enforcement of his rights before a court of competent jurisdiction in an orderly proceeding adapted to the nature of the case. Before a tax becomes irrevocably fixed as a charge on his property, the taxpayer is entitled to an opportunity, upon notice, to be heard with respect to the validity and extent of the tax, an opportunity afforded him on the application of the county collector for judgment for taxes against his property. The majority opinion of this court condemned the act of 1937 as a flagrant violation of the due process

clauses of the Federal and State constitutions for the rea-
sons, among others, that the property owner was not ac-
corded adequate notice of the statutory proceeding to val-
idate the taxes; that the publication of one notice, only,
in a locality which may not contain all interested owners,
no definite time being fixed by the act, was insufficient to
authorize a proceeding wherein the finding of the validity
of a levy was made conclusive in all subsequent proceed-
ings, the effect being to authorize personal judgments for
delinquent taxes without service of process. In the first
*Barnett case* a majority of this court decided that the act
of 1939 authorized a judgment *in personam* without per-
sonal service or sufficient notice and, further, authorized
determination of the question whether a levy is within the
maximum rate prior to the time of final assessment and
valuation of property and at a time when objectors could
not know whether the levy exceeded statutory and consti-
tutional maximum rates.

Defendants maintain that the present act provides for
certain and adequate notice and opportunity to be heard
and, consequently, is immune to attack upon the ground
that it denies due process. Section 4, they insist, provides
for good and sufficient notice and an opportunity by the
taxpayer to be heard. From this, defendants maintain
that the fact service is by publication and by mail does
not offend the requirement of due process. Referring to
the portion of the opinion in the *Griffin case* declaring "If
the statute fixed the first day of a term of court, or if
levies were required to be on file with the clerk by a fixed
date, the taxpayer would have some definite information
from which the date of hearing could be ascertained,"
they point out that section 4 of the present act satisfies
the quoted objections by fixing a definite day for the levy
of taxes, for the filing of the petition for confirmation,
and for interposing objections, as well as fixing the date
of the hearing. They argue, accordingly, that nothing is

left for ascertainment by calculation. The same observations apply with like force to the act of 1939 before us in the first *Barnett case*. Defendants claim, however, that the notice by mail provided for in the new paragraph of section 4 cures the defect pointed out in the *Griffin case*, and, together with the provision of section 9 declaring that the order of confirmation "shall not preclude any taxpayer from raising any and all defenses in an action in personam for the collection of taxes," cures the objection pointed out in the earlier *Barnett case*. The question thus presented is whether the present statute is free from the vices of its predecessors.

Section 4 provides for the mailing of notices of proceedings upon the petition for adjudication. Insuperable difficulties attend this provision for notice. The requirement is merely that a notice by mail be sent to the taxpayers within the territorial limits of the taxing district. The taxpayers are not made parties defendant in any proceeding. Ascertainment of the names of taxpayers between April 1 and 15 when the county clerk is required to mail the notice is a bar. As plaintiff points out, the county clerk cannot use the names of persons appearing on the collector's warrant books as having paid taxes for the year 1943, since these taxes were not extended until long after April 15, 1944. Use of the names on the tax rolls for 1942 is not feasible, owing to innumerable transfers of property in the meantime. Indeed, the names which do appear on the warrant books of prior years are not necessarily those of the actual taxpayers. Where property is held in a naked trust, the taxes are paid by the actual owner and not by the trustee. The name of the owner is simply not available to the county clerk. Again, taxes in many instances are paid by members of the family of an owner and those paying, for various reasons, take receipts in their own names. Agents who neither own nor are interested in the property pay taxes, and taxes are, of course, sometimes

paid by persons not legally liable therefor but who, nevertheless, pay them inadvertently or mistakenly. Persons dying intestate shortly before April 1 may leave many heirs-at-law who immediately became taxpayers entitled to notice under the act. The county clerk would find impossible the task of determining ownership and giving notice to the new owners. Other taxpayers are minors, persons *non compos mentis,* and men and women in the armed service of the United States. There are, also, those buying real estate after April 1, but prior to the date of extension of taxes, who, by their contract to purchase, assume the payment of all taxes. These persons are entitled to notice. An examination of the deeds and records in the office of the recorder of deeds of Cook county or in the Torrens office would give but little light concerning the location or address of the purchasers of the property,—taxpayers entitled to notice under section 4. The foregoing and many other like situations demonstrate the inadequacy of the provision for notice.

Persons paying taxes on personal property are likewise entitled to notice, and they may file objections to the petition for adjudication. Under the Revenue Act, (Ill. Rev. State. 1943, chap. 120, par. 529,) the county assessor lists personal property as of April 1. He does not commence his duties in this regard until April 1, and he is given two months, between the first days of April and June, to complete the list. The law provides, further, that if any property be listed or assessed after June 1 it shall be legal and binding. Manifestly, the requirement of notice to personal property taxpayers is woefully insufficient.

There is no requirement in section 4 that the notice to be mailed to the taxpayer shall be sent to his residence or his business address. So far as the statute speaks, notice may be sent in care of general delivery, Chicago. It is not only important that the notice be sent, but that there be a reasonable chance of the taxpayer receiving the notice.

Otherwise, the protection sought to be accorded by notice is illusory. Section 9 casts doubt upon the notice provided by section 4 when it states that "this order [of adjudication] shall not preclude any taxpayer from raising any and all defenses in an action in personam for the collection of taxes." If the provision for personal notice of the proceedings upon the petition for adjudication provided adequate notice, the exception from the effectiveness of the order of adjudication would be superfluous. The first portion of section 9 provides that the adjudication order shall be conclusive in an action brought by the county collector for judgment and order of sale against real estate for delinquent taxes, an action *in rem*. Section 9 renders the statute confusion confounded. The Revenue Act (Ill. Rev. State. 1943, chap. 120, par. 676,) provides that persons having common grounds may seek refunds of personal property taxes paid under protest, by joining in one petition. The effect of section 9 is that the taxpayer is prohibited from raising objections to the levies on the collector's application for judgment and sale but can, nevertheless, urge objections in his petition for the refund of personal property taxes in so far as those taxes are concerned. If sued in an action of debt for personal property taxes, he may interpose the defense of an invalid levy or, if, as is permitted, a personal liability is sought for his real estate taxes, he still enjoys the right to object to all illegal levies so far as the real estate taxes are involved. Even though the statute purports to foreclose objections on the collector's application for judgment and order of sale, section 5 merely provides that an objector *may* appear. The statute fails to command his appearance. If he does not appear, the order of adjudication would not be *res judicata* as to him and he could make objections in due course to the collector's application. (*Belleville Nail Co. v. People ex rel. Weber,* 98 Ill. 399.) In short, applying familiar rules of statutory construction, the statute does not disclose with a reasonable

degree of certainty the intention of the General Assembly. (*Boshuizen* v. *Thompson & Taylor Co.* 360 Ill. 160.) It is incomplete, its provisions are conflicting and inconsistent to such an extent that they cannot be executed, and for these additional reasons, due process is wanting. *Mayhew* v. *Nelson,* 346 Ill. 381.

The present act omits the provision in section 5 of the second act, assailed in the first *Barnett case,* that objections to rates must be made, but section 9 provides that the finding of the court in the adjudication proceeding shall be final so far as the county collector's proceeding in the county court for judgment and order of sale for delinquent taxes is concerned. Section 9 is thus, in a subsequent action by the county collector, an insuperable bar not only to all questions presented in the adjudication proceeding but also to all questions which could have been urged.

Another illustration of the want of due process is the situation where a taxpayer objects to a tax levy certified to the county clerk by one of the six separate taxing bodies covered by the act, upon the ground that it was not adopted by a yea and nay vote. If the objection be sustained, the entire levy is invalid. This being so, the levy cannot be amended. Nor may the requisite certificate be added upon the trial. (*People ex rel. Preisel* v. *New York Central Railroad Co.* 375 Ill. 574; *People ex rel. Wangelin* v. *Pitcairn,* 371 Ill. 616.) No occasion has presented itself or can thereafter arise for attacking a tax levy for its failure to specify its object and purpose, or assailing the validity of items in the levy. The provision for amending a levy or certification is, in such cases, utterly ineffective.

In arriving at our conclusion, we have considered the previous legislation on the subject. We recognize that the General Assembly had before it our decisions in the *Griffin* and *Barnett cases* and that the legislative intent was to meet the defects in the earlier statutes pointed out by this court.

(*People* v. *Solomon,* 265 Ill. 28.) Notwithstanding the laudable objective motivating the challenged legislation, the duty rests upon the judiciary to determine whether the statute attacked in the present case squares with the Federal and State constitutional guaranties of due process of law. This it fails to do and, hence, cannot stand.

It becomes unnecessary to consider the other contentions and supporting arguments of the parties.

The decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*