(Nos. 31014-31015.—

ILLINOIS LIQUOR CONTROL COMMISSION, Appellant, *vs.* CHICAGO'S LAST LIQUOR STORE, INC., Appellee.—ILLINOIS LIQUOR CONTROL COMMISSION, Appellant, *vs.* THREE FEATHERS DISTRIBUTORS, INC., Appellee.

*Opinion filed September 22, 1949.*

Ivan A. Elliott, Attorney General, of Springfield, (William C. Wines, Raymond S. Sarnow, and James C. Murray, all of Chicago, of counsel,) for appellant.

Maurice R. Kraines, and Landis & Landis, both of Chicago, for appellees.

Mr. Justice Gunn delivered the opinion of the court:

The Illinois Liquor Control Commission, referred to as the Commission, issued citations against Three Feathers Distributors, Inc., No. 31014, and against Chicago's Last Liquor Store, Inc., No. 31015. These respondents will be referred to as Three Feathers and Chicago's Liquor, respectively. The respondents were charged with violating the Illinois Mandatory Fair Trade Act. (Ill. Rev. Stat. 1947, chap. 43, pars. 196-204.) After a hearing an order was entered on April 16, 1948, suspending the license of Three Feathers, and on May 13, 1948, suspending the license of Chicago's Liquor. What is designated as an appeal was taken to the circuit court of Cook County, and an order entered by said court setting aside the orders of the Commission in both cases, on the ground that the Mandatory Fair Trade Act was unconstitutional.

The act claimed to have been violated required in substance that a manufacturer, distributor or importing distributor of any brand of alcoholic liquor shall file with the Illinois Liquor Control Commission a copy of a fair trade contract, together with a price schedule of consumer minimum resale prices by the bottle, and a description of the contents and size of the container, and age, which prices shall be uniform throughout the State; and provided that the Liquor Control Commission might revoke or suspend licenses for violation of the act. The facts are not in dispute. The appellees did not conform to the provisions

of the act, which, if valid, rendered them subject to its penalties.

While it is contended by respondents that the notices and citations were insufficient, and that they had not received procedural due process, it will be unnecessary to discuss these propositions if the act in question is unconstitutional. The same question arises in both cases, and they have been consolidated for opinion.

At the outset the right of the Commission to appeal is raised upon the ground that the proceeding was not one at law or in chancery, and was not according to the course of the common law, and that no property rights are involved, citing *City of Freeport* v. *Kaiser,* 311 Ill. App. 197, to sustain this position. If the action of the Commission in suspending the licenses of appellees had been sustained by the circuit court there is no question but what the respondents would have had a right to appeal, or to prosecute a writ of error. (*Superior Coal Co.* v. *O'Brien,* 383 Ill. 394.) While it is true that property or liberty is not involved in the appeal of the Commission, yet we have held that the right to appeal must be reciprocal, or constitutional rights will be violated. (*People ex rel. Mercer* v. *Wyanet Electric Light Co.* 306 Ill. 377; *People* v. *Sholem,* 238 Ill. 203.) At the time of the Appellate Court decision in the *Kaiser case,* the *Superior Coal Co. case* had not been decided by this court, and hence, insofar as it holds contrary to the later decision of the Supreme Court, it is superseded by the decision of the *Superior Coal Co. case.* We are of the opinion, under our announced rule that reciprocal rights to appeal are necessary to prevent a lack of due process of law, that the appeal was properly taken in this case.

From a consideration of the provisions, or lack of provisions, in the Mandatory Fair Trade Act, its validity depends upon the application of either of two principles of constitutional law: (1) Is the law complete in all of its

terms and conditions when it leaves the legislature, so that every person may know by reading the law what his rights are and how it will operate when put into execution; and (2) Does the Mandatory Fair Trade Act unconstitutionally amend other statutes, contrary to section 13 of article IV of the constitution, which provides that "no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act."

In the instant case three separate acts of the General Assembly are involved: (1) The Liquor Control Act (chap. 43, pars. 94 to 194, incl.); (2) the act to protect trademarks, etc., (chap. 121½, pars. 188 to 191, incl.) known as The Fair Trade Act; and (3) the act of July 29, 1947, referred to in the briefs as the Mandatory Fair Trade Act, (chap. 43, pars. 196 to 204, incl.)

The first of these statutes concerns the general regulation of the liquor business. The second statute was for the purpose of protecting trademarks and permitting the fixing of a resale price; and the third statute purports to require persons dealing in liquor (except beer) to file a schedule of retail prices, which will require the purchaser consumer to adhere to it, together with various other regulatory provisions and permitting the suspension of licenses for a violation of its provisions.

It is to be observed that while the Mandatory Fair Trade Act is found in the chapter of the statute relating to dramshops, yet it is an independent act and is no part of the Liquor Control Act, formerly known as the Dramshop Act, since it bears a separate title—"An Act regulating the sale of certain alcoholic beverages." And it is further to be observed that while this statute prohibits distributors of alcoholic liquor from selling branded liquor except pursuant to a fair trade contract, yet, it is apparent it is not a part of the act to protect trademarks, nor is the latter a part of said regulatory act.

When the Mandatory Fair Trade Act is carefully considered and analyzed it becomes clear that it is an independent act, and lacks many provisions to make it effective as a separate act of legislation. Section 1 provides: "No manufacturer, distributor or importing distributor shall sell alcoholic liquor, except beer, the containers of which bear labels stating the brand or name of the owner or producer, in this State, except pursuant to a Fair Trade. Contract." Nowhere in the act is there any provision defining what is meant or intended by the words "Fair Trade Contract," unless it was intended to refer to the act to protect trademarks.

Section 2 requires a distributor of alcoholic liquors to file with the Illinois Liquor Control Commission a copy of its fair trade contract, together with a price schedule, which shall contain a statement of the consumer minimum resale price by the bottle, etc. Section 8 provides that for a violation of any of the provisions of the act the Commission may suspend or revoke a license: For the first offense not exceeding ten days' suspension of the license; for the second offense not exceeding thirty days' suspension of the license; and for the third offense the Commission may suspend or revoke the license. Section 9 provides that no license shall be revoked or suspended until the licensee has been found guilty of the violations alleged in a public hearing before the Commission.

The term "Fair Trade Contract" is not defined in this act; it is not defined in the Liquor Control Act; nor is it defined in the Fair Trade Act. This act also mandatorily requires the making of a "fair trade contract." It is not permissive, as is provided in section 1 of the Fair Trade Act. No notice is provided for hearings concerning violations of the act, nor the place of hearing, nor means for procuring the presence of witnesses; nor, as a matter of fact, does the statute itself provide for where, or how, the charges may be filed. The act does not define what the

"Commission" is, nor what its powers may be, nor what manner of hearing or notice of hearing is required to exercise its powers. The act does not purport to be a complete act within itself. To give it any effect it is necessary to consider, in connection therewith, not only the Liquor Control Act, but also the Fair Trade Act. If there were no Liquor Control Act, or a Fair Trade Act, the law under consideration in this case would be unintelligible. It lacks the requirement of certainty, and of being definite.

In *Chicagoland Agencies, Inc.* v. *Palmer,* 364 Ill. 13, the statute involved provided that licenses might be revoked by the Director of Insurance "after due investigation and a hearing." In holding that this act was void because it was not complete in all of its terms and conditions, we said: "An act, to be valid, may not be vague, indefinite and uncertain but must be complete when it leaves the legislature and be sufficiently explicit to advise everyone what his rights are under it and how he will be affected by its operation. * * * The powers attempted to be conferred upon the director are so arbitrary, unlimited and unrestrained that such powers are in direct conflict with the constitutional command that the legislature may not delegate its legislative function to any person or body."

In *Mayhew* v. *Nelson,* 346 Ill. 381, in holding an act invalid, we said: "The act omits to provide when and where such boards shall meet, whether they shall conduct hearings at which parties interested in the subject matter may appear, whether the attendance of witnesses may be compelled and whether a record of the proceedings shall be kept. So far as the act is concerned, the procedure before these boards is wholly conjectural. The provision for a review of the finding of an appeal board is likewise incomplete and indefinite. There is no specification of the time within which, or the court by which, the finding may be reviewed. Whether the court shall allow a trial *de novo*

or review some record does not appear. Wanting in the essentials of a statutory review, the provision is unenforceable." These cases were followed or cited with approval in *Reid* v. *Smith,* 375 Ill. 147; *Krebs* v. *Thompson,* 387 Ill. 471; *McDougall* v. *Lueder,* 389 Ill. 141; *Barnett* v. *County of Cook,* 388 Ill. 251.

Considered as a separate act the statute under which the proceedings were brought in these cases is uncertain and incomplete, and could not be put into operation except by assuming that portions of other statutes are understood to be a part thereof.

The purpose of section 13 of article IV of the constitution is set out in *People ex rel. Stuckart* v. *Knopf,* 183 Ill. 410, where, quoting from Justice Cooley, we said: "The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves are sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws."

The validity of laws adopted in a manner similar to the present act has been before this court many times. In *O'Connell* v. *McClenathan,* 248 Ill. 350, a statute was enacted under the following title: "An Act in relation to the garnishment of administrators and executors." There was also in effect a general garnishment act, and the point was made that the statute violated section 13 of article IV of the constitution. In sustaining the claim that the act was unconstitutional the court followed *Badenoch* v. *City of Chicago,* 222 Ill. 71, where we said: "It thus appears that the act of 1905 is not a complete act within itself, and that it amounts to nothing more than an attempt to change the existing statutes of the State upon the subject of attachment and garnishment, so as to make them broad enough to include within their terms the attachment and garnishment of the salaries and wages of the officers and em-

ployees of the municipal corporations named in the new act by intermingling the provisions of the new act with those of the old statutes upon those subjects, the effect of which clearly is to bring the new statute within the view expressed in the *Knopf case,* and to render .it unconstitutional and void, as amounting to amendments of the general statutes upon the subjects of attachment and garnishment heretofore in force in this State."

In *People ex rel. Gramlich* v. *City of Peoria,* 374 Ill. 313, the subject matter was an amendment to the Firemen's Minimum Wage Act, which provided for an additional tax by referendum. In holding this amendment unconstitutional, we used this language: "The subject matter of the original act was to provide a minimum wage to be paid firemen in cities coming within a specified class based upon population. It became effective upon its passage and approval. The effect of section 4 was to suspend section 2 until a condition imposed by section 4 could be complied with, namely, the adoption of the act by a referendum. Section 4 is meaningless unless reference is made to section 2 of the original act. Section 4 makes no provision for a minimum wage to be paid firemen and contains no classifications of cities to which the act is applicable. Standing alone, the amendatory act merely provides for a referendum and does not specify the subject matter to which it refers. It can only be traced through the sentences above referred to from section 4. The words 'this act,' as used therein, obviously refer to both the original and amendatory acts. The purpose of the provision quoted from section 13 of article 4 of the constitution was to avoid the necessity of having to make reference to a prior law to determine and give meaning to an amendatory act."

The principle here discussed is so well settled that the citation of the many other cases holding the same is unnecessary. It is clear that the act, considered by itself, is ineffective, and it is unconstitutional and void as an amend-

ment of the Liquor Control Act or of the Fair Trade Act. Since the act is not effective as an independent and complete act, and since it cannot be considered as a part of either of the other acts mentioned, there is no legal statute under which distributors of alcoholic liquors could be required to enter into what is designated as a "fair trade contract," or to be subject to any of the penalties for a failure to conform to such a statute. It follows that the order of the circuit court of Cook County in setting aside the order of the Illinois Liquor Control Commission was correct, and should be affirmed.

Many other points questioning the validity of the proceedings of the Illinois Liquor Control Commission are raised in the briefs, but it is unnecessary to consider them here, since the act, for the reasons pointed out above, is void. Counsel for the Commission, in their briefs, do not attempt to refute these general principles of constitutional law, but content themselves by saying that the legislature has ample and plenary power to adopt laws concerning the regulation of alcoholic liquors. Without passing upon this question, it is sufficient to say that if the sale or distribution of such liquors is regulated by law, the statute must be complete, so that every person by reading the law may know its meaning, and likewise it must not consist of the amendment of other laws, contrary to the provisions of section 13 of article IV of the constitution. In other words, if liquor is regulated it must be by the provisions of a valid law.

The judgments of the circuit court of Cook County are affirmed.

*Judgments affirmed.*