(No. 76651.—Affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. KURTIS WASHINGTON, Appellee.

*Opinion filed April 18, 1996.—Rehearing denied June 3, 1996.*

McMORROW, J., specially concurring.
MILLER, J., joined by BILANDIC, C.J., dissenting.
BILANDIC, C.J., joined by MILLER, J., dissenting on denial of rehearing.

Roland Burris, Attorney General, of Springfield, and

Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen and Arleen C. Anderson, Assistant Attorneys General, of Chicago, and Renee G. Goldfarb, Michael P. Golden and Theodore Fotios Burtzos, Assistant State's Attorneys, of counsel), for the People.

Joel T. Pelz, Ellen R. Kordik and Jacob I. Corre, of Jenner & Block, of Chicago, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

The question in this case is whether due process is implicated in a claim of innocence based upon new evidence so as to permit the claim to be raised in a petition under the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1992)). We hold that it is.

## BACKGROUND

In 1982, Kurtis Washington was sentenced to 25 years in prison for murdering Tony Hightie. Hightie had been murdered outside his home in Chicago shortly after 9 p.m. on May 9, 1980. Washington was implicated in the crime by Donna McClure, Hightie's girlfriend, and Ronald Tapes.

McClure and Tapes witnessed the murder. At trial, they said that they had been sitting in a parked car near Hightie's home when they were approached by a man. The man said that he was looking for someone named Will. When McClure and Tapes proved no help, the man approached Hightie just as he left his home. Hightie had been wearing a jacket and hat that belonged to Tapes' brother who was named William. McClure and Tapes said that after a few words with Hightie, the man shot him. The man, McClure and Tapes said, was Washington.

Washington's defense was that he had been at a grocery store at the time of Hightie's murder. The store

cashier, a person who had accompanied Washington, and Washington's mother all testified to that fact.

The appellate court affirmed the conviction and sentence on direct review (No. 1—82—1868 (unpublished order under Supreme Court Rule 23)). In 1990, Washington filed a post-conviction petition, alleging nine grounds of error, six of which asserted ineffective assistance of trial counsel. See U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 2, 8.

One of the grounds was that Washington's trial counsel, a private attorney who also served as Washington's appellate counsel, failed to investigate evidence that someone other than Washington murdered Hightie. The claim was supported with an affidavit of Jacqueline Martin dated March 3, 1990. Evidence was permitted on that as well as the other ineffective-assistance claims.

The trial judge held an *in camera* hearing in which he considered Martin's testimony. Underlying the claim at issue in this appeal is the substance of that testimony.

Martin told how Hightie had been shot after having been mistaken for someone else. Martin, who was 16 years old at the time, told how she had been present when Marcus Halsey, then her boyfriend, and Frank Caston had left Halsey's house to revenge an earlier beating of Halsey's brother. She, Halsey, Caston, and Caston's girlfriend drove in a car to an alley in a neighborhood in Chicago. She later learned that it happened to be the neighborhood where Hightie lived. Martin told how, after Halsey and Caston left the car, she had heard two gunshots, and, when the two returned, she had heard Halsey say "it was the wrong guy." Halsey and Caston later changed clothes, discarding in another alley what they had earlier worn. Martin said that they drove to the home of one of Halsey's sisters, where she stayed the rest of the night.

Halsey was questioned by police the next morning.

Martin accompanied him to the police station, as did Caston's girlfriend. At the station, Martin found in her pocket bullets that Halsey had handed to her the night before. She said that she threw the bullets away.

Martin said that after the police questioning, Halsey had threatened to kill her if she told anyone what had happened. Halsey's threats continued, Martin said, and so she eventually stopped going to Halsey's house. Some months later, Halsey's brother confronted her as she was walking near a park and forcibly took her to Halsey. She said that she was kept against her will at Halsey's house for three weeks to a month. She eventually escaped with the help of an unnamed acquaintance whom she happened to see while looking out a window. Martin said that she went immediately to her mother's house. That same day she left for Mississippi. She stayed there for six years. Martin told how at the time of the hearing she still feared Halsey.

In view of Martin's *in camera* testimony, Washington successfully sought to amend his post-conviction petition to add a tenth claim based upon the newly discovered evidence.

The trial judge denied relief under the first nine claims Washington asserted, including the ineffectiveness claim which was supported by Martin's affidavit and testimony. Regarding that claim, the judge referred to testimony given by Washington's defense counsel that, in preparation for trial, he had tried to contact Martin. Counsel had also testified that he believed Washington had a strong alibi defense and his strategy was to focus on that rather than to try to prove that someone other than Washington murdered Hightie.

However, the trial judge granted a new trial on the ground that Martin's testimony was new evidence which, if believed, would have "had some significant impact" upon the jury. The State appealed. Washington

cross-appealed, contesting the denial of relief on the petition's other nine claims. The appellate court affirmed the grant of relief as to the newly discovered evidence claim without addressing the others. 256 Ill. App. 3d 445.

We granted the State's petition for leave to appeal. Meanwhile, Washington, who had been released on an appeal bond, was charged with, pleaded guilty to, and was sentenced to probation for an unrelated offense. We revoked his appeal bond. Though Washington had failed to appear after the bond revocation, his counsel again filed a cross-appeal contesting the denial of relief under the petition's other claims. 134 Ill. 2d R. 318(a). The State moved to strike the cross-appeal under the fugitive dismissal doctrine (see *People v. Partee*, 125 Ill. 2d 24, 37 (1988)). We granted that motion, leaving for this appeal only consideration of Washington's newly discovered evidence claim.

## ANALYSIS

The claim Washington raised is a "free-standing" claim of innocence; unlike the ineffective-assistance claim supported by Martin's testimony, the newly discovered evidence is not being used to supplement an assertion of a constitutional violation with respect to his trial. The issue is not whether the evidence at trial was insufficient to convict Washington beyond a reasonable doubt. The appellate court rejected that challenge on direct appeal. The issue is whether Washington's claim of newly discovered evidence can be raised in a petition under the Post-Conviction Hearing Act to entitle Washington to a new trial. Post-conviction relief is Washington's remaining hope for a judicial remedy, the time limitations of other avenues offering relief for such a claim having lapsed. See 735 ILCS 5/2–1202(c) (West 1992) (allowing such claims to be made in a motion for a new trial within 30 days); 735 ILCS 5/2–1401(c) (West

1992) (permitting such claims up to two years after a final judgment, the period being excused in certain limited situations, including "fraudulent[ ]" concealment of evidence). Executive clemency, of course, would remain available to Washington. Ill. Const. 1970, art. V, § 12; 730 ILCS 5/3—3—13 (West 1992).

To decide the issue, we must see if either a federal or Illinois constitutional right is implicated in such a freestanding claim of innocence, since Post-Conviction Hearing Act relief is limited to constitutional claims. 725 ILCS 5/122—1 (West 1992). Washington argues that his claim implicates due process protections. The beginning point for addressing that argument is *Herrera v. Collins*, 506 U.S. 390, 122 L. Ed. 2d 203, 113 S. Ct. 853 (1993), where the Supreme Court rejected the contention as a federal constitutional matter. In light of our own constitution's due process guaranty, we must also assess Washington's argument as a matter of Illinois constitutional jurisprudence. See *Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990).

### Federal Due Process

The issue in *Herrera* was whether a freestanding claim of innocence following a Texas capital conviction could be raised in a *habeas corpus* petition in view of either the eighth amendment protection against cruel and unusual punishment or the fourteenth amendment due process clause. *Herrera*, 506 U.S. at 397-98, 122 L. Ed. 2d at 215, 113 S. Ct. at 859. Ten years after his conviction, Herrera claimed that his brother, who had since died, committed the crimes. The claim was supported by two affidavits. The Court said that the claim implicated neither the eighth nor the fourteenth amendment but also offered that, even if that were not the case, the claim was unpersuasive anyway. The opinion requires close study.

Looking first to the eighth amendment, the Court

admitted an "elemental appeal" in the notion that the Constitution should be construed to prohibit the execution or imprisonment of the innocent. *Herrera,* 506 U.S. at 398, 122 L. Ed. 2d at 215, 113 S. Ct. at 859. But constitutionally, a newly discovered evidence claim had to "be evaluated in the light of the previous proceedings" in which guilt or innocence was determined. *Herrera,* 506 U.S. at 398, 122 L. Ed. 2d at 215, 113 S. Ct. at 859. The Court explained that once the usual constitutional safeguards for ensuring against the risk of convicting the innocent in trial proceedings were met, a conviction must mean that the person convicted is no longer "innocent" but is one "who has been convicted by due process of law." See *Herrera,* 506 U.S. at 398-99, 400, 122 L. Ed. 2d at 215, 216, 113 S. Ct. at 859, 860. Recognizing a freestanding claim of innocence would amount to according "additional process." *Herrera,* 506 U.S. at 406, 122 L. Ed. 2d at 221, 113 S. Ct. at 864.

In reality, a freestanding innocence claim could present but an error of fact in the trial outcome; it could not reflect the kind of constitutional violation for which *habeas* relief was designed. *Herrera,* 506 U.S. at 400, 122 L. Ed. 2d at 216-17, 113 S. Ct. at 860, quoting *Townsend v. Sain,* 372 U.S. 293, 317, 9 L. Ed. 2d 770, 788, 83 S. Ct. 745, 759 (1963). The claim was not, the Court reminded, one asserting that the evidence at trial was not sufficient to convict beyond a reasonable doubt. *Herrera,* 506 U.S. at 401-02, 122 L. Ed. 2d at 217-18, 113 S. Ct. at 861. And the Court pointed out how the claim was different from the showing of innocence needed to excuse a procedural bar under the "fundamental miscarriage of justice exception" of *habeas* jurisprudence. *Herrera,* 506 U.S. at 404, 122 L. Ed. 2d at 219, 113 S. Ct. at 862 (stating that the showing of innocence was merely a "gateway" to consideration of an otherwise procedurally barred constitutional claim). A claim of innocence itself

simply was not, the Court concluded, cognizable under the eighth amendment. *Herrera*, 506 U.S. at 404-05, 122 L. Ed. 2d at 219, 113 S. Ct. at 862.

Turning to the fourteenth amendment, the Court noted, first, that procedural, not substantive, due process governed, for substantive due process analysis would require the petitioner, in fact, to be innocent. *Herrera*, 506 U.S. at 407 n.6, 122 L. Ed. 2d at 221 n.6, 113 S. Ct. at 864 n.6. But he was not, the Court explained. The petitioner had been convicted in an otherwise constitutionally proper trial. Therefore, the relevant question was not whether due process prohibited execution of an innocent person but whether it permitted judicial review of a freestanding claim of innocence. *Herrera*, 506 U.S. at 407-08, 122 L. Ed. 2d at 221, 113 S. Ct. at 864.

The Court said it did not, answering the question in consideration of the possible relief. As for commanding a new trial, the Court noted that it generally deferred to state "expertise" as to criminal process and procedure. *Herrera*, 506 U.S. at 407-08, 411, 122 L. Ed. 2d at 221, 223, 113 S. Ct. at 864, 866, quoting *Patterson v. New York*, 432 U.S. 197, 202, 53 L. Ed. 2d 281, 287, 97 S. Ct. 2319, 2322 (1977). The Court could not find it unfair that Texas precluded new evidence to be presented years after a conviction. *Herrera*, 506 U.S. at 411, 122 L. Ed. 2d at 223, 113 S. Ct. at 866. As for vacation of the death sentence, the Court noted that Texas, like all capital punishment states, including Illinois, have constitutional or statutory provisions for executive clemency. *Herrera*, 506 U.S. at 414 n.14, 122 L. Ed. 2d at 225 n.14, 113 S. Ct. at 867 n.14. Executive clemency, the Court explained, is the "fail safe" of our criminal justice system. *Herrera*, 506 U.S. at 415, 122 L. Ed. 2d at 226, 113 S. Ct. at 868.

In the last portion of the opinion, the Court never-

theless addressed "for the sake of argument" the petitioner's claim—rejecting it—as if it were constitutionally cognizable. *Herrera,* 506 U.S. at 416-19, 122 L. Ed. 2d at 227-28, 113 S. Ct. at 869-70. To do so, the Court proceeded under an assumption that "a truly persuasive demonstration of 'actual innocence' " in a capital case where there was "no state avenue open to process such a claim" would be unconstitutional. *Herrera,* 506 U.S. at 417, 122 L. Ed. 2d at 227, 113 S. Ct. at 869. That portion of the opinion sparked comments both in concurrence and dissent.

In her concurrence, which Justice Kennedy joined, Justice O'Connor pointed out that the analysis of the last portion of the opinion was "neither necessary" to the case "nor advisable." *Herrera,* 506 U.S. at 421, 122 L. Ed. 2d at 230, 113 S. Ct. at 871 (O'Connor, J., concurring, joined by Kennedy, J.). She acknowledged the "sensitive" and "troubling" issue presented, remarking that the "execution of a legally and factually innocent person would be a constitutionally intolerable event." *Herrera,* 506 U.S. at 419, 421, 122 L. Ed. 2d at 228, 230, 113 S. Ct. at 870, 871 (O'Connor, J., concurring, joined by Kennedy, J.). Yet, Justice O'Connor concluded, in a case where a jury found evidence sufficient to convict in an otherwise constitutionally fair trial, the "sole remedy was a pardon or clemency." *Herrera,* 506 U.S. at 421, 122 L. Ed. 2d at 230, 113 S. Ct. at 871 (O'Connor, J., concurring, joined by Kennedy, J.).

In his concurrence, which Justice Thomas joined, Justice Scalia pointed out that the Court had already said, in *Townsend v. Sain,* 372 U.S. 293, 9 L. Ed. 2d 770, 83 S. Ct. 745 (1963), though without elaboration, that *habeas* relief was not available for claims of actual innocence. *Herrera,* 506 U.S. at 428-29, 122 L. Ed. 2d at 235, 113 S. Ct. at 875 (Scalia, J., concurring, joined by Thomas, J.). Justice Scalia simply understood the first

part of the Court's opinion to strengthen the statement made in *Townsend. Herrera*, 506 U.S. at 429, 122 L. Ed. 2d at 235, 113 S. Ct. at 875 (Scalia, J., concurring, joined by Thomas, J.).

In his dissent, which Justices Stevens and Souter joined, Justice Blackmun believed the first portion of the opinion to be *dictum*, not the second part Justice O'Connor identified. *Herrera*, 506 U.S. at 430, 122 L. Ed. 2d at 235, 113 S. Ct. at 876 (Blackmun, J., dissenting, joined by Stevens and Souter, JJ.). Justice Blackmun noted that "[t]he majority's disposition *** leaves the States uncertain of their [federal] constitutional obligations." *Herrera*, 506 U.S. at 439, 122 L. Ed. 2d at 242, 113 S. Ct. at 881 (Blackmun, J., dissenting, joined by Stevens and Souter, JJ.). He disagreed that procedural and not substantive due process governed the fourteenth amendment analysis, the execution of an innocent person being "the ultimate ' "arbitrary impositio[n]." ' " *Herrera*, 506 U.S. at 436-37, 122 L. Ed. 2d at 239-40, 113 S. Ct. at 878-79 (Blackmun, J., dissenting, joined by Stevens and Souter, JJ.), quoting *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 848, 120 L. Ed. 2d 674, 696, 112 S. Ct. 2791, 2805 (1992).

On one hand *Herrera* underscores the unkind reality that, though the Constitution "offers unparalleled protections against convicting the innocent" (*Herrera*, 506 U.S. at 420, 122 L. Ed. 2d at 229, 113 S. Ct. at 871 (O'Connor, J., concurring, joined by Kennedy, J.)), it cannot guaranty that result (see *Patterson*, 432 U.S. at 208, 53 L. Ed. 2d at 291, 97 S. Ct. at 2326). Then again, the last portion of the opinion suggests that the Constitution must somehow be made to do so, at least in a capital case. *Herrera*, 506 U.S. at 416-19, 122 L. Ed. 2d at 227-28, 113 S. Ct. at 869-70. Justice O'Connor echoed that notion, even agreeing that only a pardon or clemency could promise relief given a constitutionally fair

conviction. How the Constitution might guaranty that the truly innocent are not imprisoned or executed given the greater portion of the Court's discussion in *Herrera* is not easily answered.

It is no criticism to read *Herrera* as a conflicted decision. As Justice O'Connor said, claims of innocence— even those in noncapital cases—present troubling issues. We are, of course, bound by the Supreme Court's interpretation of the United States Constitution. Conflicted or not, at least for noncapital cases, *Herrera* clearly states, as the Court did in *Townsend v. Sain*, that a freestanding claim of innocence is not cognizable as a fourteenth amendment due process claim. And so Washington's effort to state a federal constitutional due process claim under the Post-Conviction Hearing Act must fail.

Due Process Under the Illinois Constitution

The possibility remains that Washington's claim may be cognizable under the Illinois Constitution's due process protection. That protection is stated as it is in the fourteenth amendment: no person "shall be deprived of life, liberty or property without due process of law." Ill. Const. 1970, art. I, § 2; see U.S. Const., amend. V. The Record of Proceedings of the Constitutional Convention does not reveal anything as to what the drafters intended for the Illinois protection different from the federal counterpart. See 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1496-1523.

Nevertheless, in *People v. McCauley*, 163 Ill. 2d 414, 440 (1994), we noted that we labor under no self-imposed constraint to follow federal precedent in "lockstep" (see *People v. Tisler*, 103 Ill. 2d 226, 245 (1984)) in defining Illinois' due process protection. In *McCauley*, we looked primarily to how the protection had been interpreted with respect to the issue there presented: police interference with a suspect's right to legal assistance. We found

historical support to say that, as a state matter, due process should protect against deliberate attempts to deny legal counsel. *McCauley*, 163 Ill. 2d at 441-42.

As for Washington's claim here, there are decisions in which this court has perfunctorily evaluated new evidence claims in cases brought under the Post-Conviction Hearing Act. See *People v. Silagy*, 116 Ill. 2d 357, 367-68 (1987); *People v. Witherspoon*, 36 Ill. 2d 471, 477-78 (1967), *rev'd on other grounds*, 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770 (1968). The same is true of decisions of our appellate court. See, *e.g.*, *People v. Cunningham*, 267 Ill. App. 3d 1009, 1017 (1994); *People v. Moleterno*, 254 Ill. App. 3d 615, 624-25 (1993); *People v. Lovitz*, 101 Ill. App. 3d 704, 708 (1981). The practice seen in those decisions is an evaluation of the claim as if it were brought in a motion for a new trial. See, *e.g.*, *Silagy*, 116 Ill. 2d at 368, citing *People v. Molstad*, 101 Ill. 2d 128, 134 (1984); but see *People v. Albanese*, 125 Ill. 2d 100, 114 (1988), relying upon *People v. Cornille*, 95 Ill. 2d 497 (1983).

But neither this court nor the appellate court has ever expressly identified the constitutional right implicated in a freestanding claim of innocence based upon new evidence. It is because that issue is raised here for the first time that the State sought leave to appeal under Supreme Court Rule 317(a) (134 Ill. 2d R. 317(a) (allowing appeals as of right when questions under the federal or Illinois Constitutions are raised for the first time in and as a result of the action of the appellate court)). Again, Post-Conviction Hearing Act relief is impossible if no constitutional right is implicated in the claim asserted. *People v. Orndoff*, 39 Ill. 2d 96, 99 (1968).

Perhaps the closest this court has come to determining that our constitution's due process clause could be a means to recognize a newly discovered evidence claim for post-conviction purposes was in *People v. Cornille*, 95

Ill. 2d 497 (1983). There, the court held that a post-conviction claim based upon the discovery that an expert testifying in an arson prosecution lied about his expertise was cognizable under the due process clauses of both the United States and Illinois Constitutions. *Cornille*, 95 Ill. 2d at 505-15. However, the decision did not turn on a differentiation of the clauses. The State's failure to prevent the perjury by verifying the expert's credentials was sufficient "indicia of State action" which, linked to the "adjudicatory process[ ]," made the expert's conduct a due process violation under both. *Cornille*, 95 Ill. 2d at 511. *Cornille* finds its place among a long line of related cases holding that the use of false testimony underlying a conviction is a due process violation. *Cornille*, 95 Ill. 2d at 508-09.

Those kinds of claims are fundamentally different from ones such as Washington has raised. Washington can claim no state action with regard to the evidence he now relies upon for post-conviction relief. And the "adjudicatory process" by which he was convicted did not otherwise lack due process. Essentially, then, the issue is the time relativeness of due process as a matter of this State's constitutional jurisprudence; that is, should additional process be afforded in Illinois when newly discovered evidence indicates that a convicted person is actually innocent?

We believe so as a matter of both procedural and substantive due process. In terms of procedural due process, we believe that to ignore such a claim would be fundamentally unfair. See *McCauley*, 163 Ill. 2d 441; see generally *Herrera*, 506 U.S. at 435 n.5, 435-37, 122 L. Ed. 2d at 239 n.5, 239-40, 113 S. Ct. at 878 n.5, 878-79 (Blackmun, J., dissenting, joined by Stevens and Souter, JJ.), citing *Medina v. California*, 505 U.S. 437, 120 L. Ed. 2d 353, 112 S. Ct. 2572 (1992).

Imprisonment of the innocent would also be so con-

science shocking as to trigger operation of substantive due process. See *Herrera*, 506 U.S. at 436-37, 122 L. Ed. 2d at 239-40, 113 S. Ct. at 879 (Blackmun, J., dissenting, joined by Stevens and Souter, JJ.). The conflicted analysis in *Herrera* is some proof of that. Though the Court rejected the application of substantive due process principles as grounds in *Herrera*, the Court nevertheless conceded that "a truly persuasive demonstration of 'actual innocence' " *would* make a conviction unconstitutional. *Herrera*, 506 U.S. at 417, 122 L. Ed. 2d at 227, 113 S. Ct. at 869.

We have no difficulty seeing why substantive due process as a matter of Illinois constitutional law offers the grounds for such a conclusion. The Supreme Court rejected substantive due process as means to recognize freestanding innocence claims because of the idea that a person convicted in a constitutionally fair trial must be viewed as guilty. That made it impossible for such a person to claim that he, an innocent person, was unfairly convicted.

We think that the Court overlooked that a "truly persuasive demonstration of innocence" would, in hindsight, undermine the legal construct precluding a substantive due process analysis. The stronger the claim—the more likely it is that a convicted person is actually innocent—the weaker is the legal construct dictating that the person be viewed as guilty. A "truly persuasive demonstration of innocence" would effectively reduce the idea to legal fiction. At the point where the construct falls apart, application of substantive due process principles, as Justice Blackmun favored, is invited. *Herrera*, 506 U.S. at 436, 122 L. Ed. 2d at 239-40, 113 S. Ct. at 879 (Blackmun, J., dissenting, joined by Stevens and Souter, JJ.), quoting *Planned Parenthood of Southeastern Pennsylvania*, 505 U.S. at 848, 120 L. Ed. 2d at 696, 112 S. Ct. at 2805.

We believe that no person convicted of a crime should be deprived of life or liberty given compelling evidence of actual innocence. See generally *Herrera*, 506 U.S. at 417, 122 L. Ed. 2d at 227, 113 S. Ct. at 869; see also *Herrera*, 506 U.S. at 419, 122 L. Ed. 2d at 228, 113 S. Ct. at 870 (O'Connor, J., concurring, joined by Kennedy, J.) (acknowledging as a "fundamental legal principle that executing the innocent is inconsistent with the Constitution"). Given the limited avenues that our legislature has so far seen fit to provide for raising freestanding claims of innocence, that idea—but for the possibility of executive clemency—would go ignored in cases like this one. We therefore hold as a matter of Illinois constitutional jurisprudence that a claim of newly discovered evidence showing a defendant to be actually innocent of the crime for which he was convicted is cognizable as a matter of due process. That holding aligns Illinois with other jurisdictions likewise recognizing, primarily as a matter of state *habeas corpus* jurisprudence, a basis to raise such claims under the rubric of due process. See *State ex rel. Holmes v. Court of Appeals*, 885 S.W.2d 389 (Tex. Crim. App. 1994); *Summerville v. Warden, State Prison*, 229 Conn. 397, 641 A.2d 1356 (1994); *In re Clark*, 5 Cal. 4th 750, 855 P.2d 729, 21 Cal. Rptr. 2d 509 (1993); *Jones v. State*, 591 So. 2d 911 (Fla. 1991).

That only means, of course, that there is footing in the Illinois Constitution for asserting freestanding innocence claims based upon newly discovered evidence under the Post-Conviction Hearing Act. Procedurally, such claims should be resolved as any other brought under the Act. Substantively, relief has been held to require that the supporting evidence be new, material, noncumulative and, most importantly, " 'of such conclusive character' " as would " 'probably change the result on retrial.' " See *Silagy*, 116 Ill. 2d at 368, quoting *Molstad*, 101 Ill. 2d at 134.

As for this case, we find neither reason to disagree with the appellate court that those concerns were satisfied nor need to elaborate upon that conclusion. See 256 Ill. App. 3d 445.

The judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE McMORROW, specially concurring:

In this appeal we are asked to decide whether newly discovered evidence that a defendant is actually innocent of a crime for which he has been convicted and sentenced may be ground for a new trial under the Illinois Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1992)). I agree with the majority that such new evidence is sufficient to raise a constitutional question cognizable in a post-conviction petition. I also agree that the defendant in the instant cause should receive a new trial based on alleged newly discovered evidence of his actual innocence with respect to crimes for which he is presently incarcerated.

I depart from the majority with respect to its analysis of the United States Supreme Court's decision in *Herrera v. Collins*, 506 U.S. 390, 122 L. Ed. 2d 203, 113 S. Ct. 853 (1993). Discussion of *Herrera* is unnecessary, inasmuch as it involves the scope of federal due process protections in the context of federal *habeas corpus* proceedings. In the case at bar, this court's proper focus should be on our State constitutional due process precedent with respect to proceedings under the Post-Conviction Hearing Act, a significant issue to which the majority gives inadequate attention. I also write separately because the majority opinion fails to address the arguments presented by the State in this case, and because the opinion neglects to explain why the defendant's evidence is sufficient to warrant a new trial. I write separately to express my views on these matters.

First, I disagree with the majority's analysis of the

United States Supreme Court's decision in *Herrera v. Collins*, 506 U.S. 390, 122 L. Ed. 2d 203, 113 S. Ct. 853 (1993). In *Herrera,* a defendant convicted of murder filed a *habeas corpus* petition 10 years after his conviction. In his petition, the defendant alleged that he had newly discovered evidence that would prove he was innocent of the crime. The Court noted that, generally, a claim based on newly discovered evidence of actual innocence did not present a basis for federal *habeas* relief in the absence of an independent constitutional violation which occurred in the state criminal proceeding. The Court justified this rule on the principle that the purpose of *habeas corpus* review is not to correct factual errors, but to remedy constitutional errors. With respect to the defendant's claim that he was entitled to a new trial under the due process clause of the fourteenth amendment, the Court reviewed jurisprudence and historical practice to conclude that the refusal to consider defendant's *habeas corpus* petition did not "transgress[ ] a principle of fundamental fairness 'rooted in the traditions and conscience of our people.' [Citation.]" *Herrera,* 506 U.S. at 411, 122 L. Ed. 2d at 223, ·113 S. Ct. at 866. The Court expressed the opinion that petitioner's proper forum was a request for executive clemency. *Herrera,* 506 U.S. at 412-15, 122 L. Ed. 2d at 224-26, 113 S. Ct. at 866-69.

Notwithstanding these observations, the Court proceeded· to an analysis of the merits of the defendant's claim of newly discovered evidence of actual innocence. The Court remarked,

"We, may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim. But because of the very disruptive effect that entertaining claims of actual in-

nocence would have on the need for finality in capital cases, and the enormous burden that having to retry cases based on often stale evidence would place on the States, the threshold showing for such an assumed right would necessarily be extraordinarily high." *Herrera*, 506 U.S. at 417, 122 L. Ed. 2d at 227, 113 S. Ct. at 869.

The Court reviewed the defendant's petition and concluded that it did not raise a justiciable question of actual innocence. *Herrera*, 506 U.S. at 418, 122 L. Ed. 2d at 227-28, 113 S. Ct. at 869-70.

The majority devotes considerable attention to the *Herrera* decision. 171 Ill. 2d at 480-85. The majority criticizes *Herrera* on the ground that it is a "conflicted decision." 171 Ill. 2d at 485. The majority also reproves the *Herrera* Court because it "overlooked that a 'truly persuasive demonstration of innocence' would, in hindsight, undermine the legal construct precluding a substantive due process analysis." 171 Ill. 2d at 488.

This court need not consider whether *Herrera* is correctly decided or analyzed, and should not speculate on what effect the Court's opinion may have with respect to application of federal due process in *habeas corpus* proceedings. The Supreme Court's decision in *Herrera* with regard to the scope of due process under the fourteenth amendment to the United States Constitution is not binding on this court's interpretation of the Illinois Constitution. The Illinois due process clause (Ill. Const. 1970, art. I, § 2) "stands separate and independent from the Federal guarantee of due process" (*Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990)) and provides ample basis to conclude that newly discovered, compelling evidence of actual innocence warrants postconviction relief.

The majority acknowledges that our state's due process guarantee cannot condone the refusal to grant a new trial to one who presents compelling evidence of actual innocence that could not have been presented

sooner in the exercise of due diligence. 171 Ill. 2d at 487. However, the majority relies upon the dissenting views expressed in *Herrera* to support this conclusion. 171 Ill. 2d at 487-88. The majority's failure to base its conclusion on Illinois case law is perplexing.

Our due process clause guarantees that no person "shall be deprived of life, liberty or property without due process of law." Ill. Const. 1970, art. I, § 2. The term "due process of law" is an ever-maturing concept that evolves from our history and precedent and is not amenable to precise definition. *Barnett v. County of Cook*, 388 Ill. 251, 255 (1944). A fundamental precept of due process is the notion that governmental forces may not exercise their powers arbitrarily and capriciously (*City of Decatur v. Chasteen*, 19 Ill. 2d 204, 210 (1960)), nor can they "override the natural demands of justice" (*Heimgaertner v. Benjamin Electric Manufacturing Co.*, 6 Ill. 2d 152, 159 (1955)). Yet it is truly arbitrary and capricious, and wholly contrary to the natural demands of justice, to deny a new trial to and continue the incarceration of a defendant who has compelling evidence of his actual innocence and who was, in the exercise of due diligence, unable to present such evidence sooner. The purpose of our criminal laws is to prosecute, imprison, and punish those who are guilty of having committed a criminal offense, not to senselessly forfeit the liberty of those whose innocence can be convincingly demonstrated. The policy of finality, as asserted by the State, must yield, as a matter of fundamental due process, to the manifest injustice that would result from the continued incarceration of a demonstrably innocent person.

I also write separately because I believe the majority is remiss in its failure to respond to arguments raised by the State. The State contends that there is Illinois precedent that newly discovered evidence of actual in-

nocence is not ground for post-conviction relief. Because of the importance of this issue, this court should fully address the State's argument.

The cases upon which the State relies are inapposite to our present inquiry. For example, in *People v. Gendron*, 41 Ill. 2d 518 (1969), this court merely noted that "allegations concerning the failure of certain witnesses to appear at trial do not present questions of constitutional dimension ***." *Gendron*, 41 Ill. 2d at 519. The *Gendron* court did not address the question of whether the testimony of the witnesses amounted to new evidence of the defendant's actual innocence that was discovered after the close of the defendant's trial.

Other precedent relied upon by the State is equally distinguishable. The rule that the defendant must prove the prosecution acted improperly or unfairly has been limited to instances where the State has knowingly used perjured testimony to obtain the defendant's conviction (*People v. Brown*, 169 Ill. 2d 94 (1995); *People v. Cihlar*, 111 Ill. 2d 212 (1986); *People v. Colletti*, 48 Ill. 2d 135 (1971); *People v. Ferguson*, 102 Ill. App. 3d 702 (1981)) and is inapplicable to the instant cause. Moreover, this court has not always required the State's knowing use of perjured testimony in order to find a due process violation. See *People v. Cornille*, 95 Ill. 2d 497, 513 (1983) (court found due process violation although prosecution had not knowingly used perjured testimony at defendant's trial, reasoning that prosecution's failure to engage in meaningful examination of witness' testimony permitted use of false testimony at trial and "create[d] enough involvement by it in the false testimony to establish a violation of due process").

The State's argument attempts to equate a defendant's request for a new trial based on the use of allegedly perjured testimony with a defendant's request for a new trial based on newly discovered evidence of actual

innocence. However, there is a significant, qualitative difference between perjured testimony and evidence that the defendant is actually innocent of the crimes for which he is incarcerated. An allegation that certain of the State's evidence against the defendant at trial was perjured is aimed at weakening and undermining the strength of the State's evidence of the defendant's guilt. An allegation of newly discovered evidence of innocence is not intended to question the strength of the State's case. An allegation of newly discovered evidence of innocence seeks to establish the defendant's actual innocence of the crimes for which he has been tried and convicted. In comparison, allegations of perjured testimony do not seek to establish the defendant's actual innocence, but are aimed at merely questioning the sufficiency of the State's evidence against the defendant at trial.

Given this important distinction, the error of the State's position is apparent. Deprivation of the life or liberty of an individual in this state, notwithstanding persuasive evidence of the person's actual innocence, unquestionably violates the fundamental concept of substantive due process of law and cannot be sanctioned by this court. Where the newly discovered evidence bears directly on the innocence of the defendant and raises a compelling question of the defendant's guilt, and the defendant could not have discovered such evidence sooner through the exercise of due diligence, it would violate our state's due process guarantees to deny the defendant the opportunity to submit such evidence to a finder of fact to determine anew his guilt or innocence. This court's precedent has established that there is a post-conviction remedy where the defendant provides newly discovered evidence that he is actually innocent of the crime for which he has been tried, convicted, and sentenced. *People v. Albanese*, 125 Ill. 2d

100 (1988); *People v. Silagy*, 116 Ill. 2d 357 (1987); *People v. Molstad*, 101 Ill. 2d 128 (1984). These decisions are valid and sound.

Having determined that newly discovered evidence of actual innocence raises a constitutional question properly considered in a post-conviction petition, the remaining issue is whether defendant should receive post-conviction relief in the instant cause. In order to be entitled to a new trial based on newly discovered evidence of actual innocence, the defendant must demonstrate that the new evidence is " 'of such conclusive character that it will probably change the result on retrial,' " that the evidence was " 'discovered since the trial and *** [that it is of such] character that it could not have been discovered prior to trial by the exercise of due diligence.' " *Molstad*, 101 Ill. 2d at 134, quoting *People v. Baker*, 16 Ill. 2d 364, 374 (1959); see also *Silagy*, 116 Ill. 2d at 368. The majority fails to analyze the evidence in the case at bar in order to determine whether defendant should receive a new trial, perfunctorily stating that it "find[s] neither reason to disagree with the appellate court that those concerns were satisfied nor need to elaborate upon that conclusion." 171 Ill. 2d at 490.

I believe that this court should address the State's arguments that the defendant's newly discovered evidence does not warrant a new trial. These issues are vitally important ones that deserve this court's close attention.

The State asks this court to overrule the holding in *Molstad* that the defendant's evidence must be "of such conclusive character that it will probably change the result on retrial." *Molstad*, 101 Ill. 2d at 134. The State argues that this court should adopt a more stringent standard by which to gauge a post-conviction petitioner's claim of newly discovered evidence of actual innocence.

The State proposes that the defendant should be required to prove that, based upon the newly discovered evidence as well as the other evidence produced at trial, no rational trier of fact could find beyond a reasonable doubt that the defendant was guilty of the crime charged. See *Herrera*, 506 U.S. at 429, 122 L. Ed. 2d at 235, 113 S. Ct. at 875 (White, J., concurring). However, this standard applies to a review of the evidence where the defendant claims that the State's evidence was insufficient to prove him guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). Moreover, where a reviewing court determines that no rational trier of fact could find the defendant guilty beyond a reasonable doubt, the proper remedy is not a new trial but an acquittal on the charges for which there was insufficient evidence to convict the defendant. *Jackson*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781.

In light of these considerations, the more stringent standard suggested by the State is not properly applicable to a post-conviction request for a new trial based on newly discovered evidence of actual innocence. This court should expressly acknowledge, but nevertheless decline, the State's invitation to overrule the *Molstad* precedent heretofore established by this court.

Requests for a new trial based on newly discovered evidence of actual innocence are to be viewed with great caution and are not lightly granted. The trial court's determination is a discretionary one that will be overturned only upon a clear abuse of discretion. *Baker*, 16 Ill. 2d at 373-74; *People v. Washington*, 230 Ill. App. 3d 1002, 1007 (1992); *People v. Clay*, 211 Ill. App. 3d 291, 303-04 (1990). There is no basis in the present record to find an abuse of discretion in the trial court's granting of the defendant's request for post-conviction relief because of newly discovered evidence of actual innocence.

The record shows that the defendant could not have discovered Jacqueline Martin or the substance of her testimony while he was standing trial for the Hightie murder. At the time defendant was being prosecuted, Jacqueline had fled to Mississippi and virtually no one knew of her whereabouts. Thus, in the exercise of due diligence, defendant could not have learned of Jacqueline's testimony in sufficient time to present it in his own defense at his trial.

The record also demonstrates that Jacqueline's testimony was critical to a determination of defendant's guilt. Jacqueline stated that Marcus Halsey's brother had been beaten and that it was believed that "Kino or Tony" had been responsible for the attack. Jacqueline's testimony established that Marcus and Frank went to Tony Hightie's neighborhood on the night of the shooting, that they had a gun with them, and that they went there in order to retaliate for the beating that Marcus' brother had sustained earlier that day. Jacqueline stated that Marcus and Frank left the car and walked to a nearby location. Jacqueline then heard two gunshots and the boys came running back to the vehicle. Jacqueline heard Marcus tell Frank that they had shot the wrong person. Both Marcus and Frank changed their clothes and threw them away in an alley. Thereafter, Jacqueline was repeatedly threatened by Marcus not to reveal what she had witnessed on the night Tony Hightie was shot.

In light of this evidence, I find no error in the trial court's allowance of the defendant's post-conviction petition. The trial court concluded that a rational trier of fact, considering Jacqueline's testimony in conjunction with the other evidence presented at defendant's trial, would probably conclude that defendant was not guilty of the Tony Hightie shooting and that it was Marcus or Frank who had shot and killed Tony Hightie. The rec-

ord supports the trial court's determination that defendant is entitled to a new trial based upon newly discovered evidence showing that he is actually innocent of the crime for which he was convicted and sentenced. I note that defendant's post-conviction petition included photographs of both the defendant and Frank Caston, an alleged friend of Marcus, and that these photographs show a remarkable facial resemblance between defendant and Frank Caston.

For these reasons, I concur in the majority's conclusion that the defendant in the instant cause should receive a new trial.

JUSTICE MILLER, dissenting:

I do not agree with the majority's conclusion that a freestanding claim of newly discovered evidence of innocence constitutes a basis for relief under the Post-Conviction Hearing Act (725 ILCS 5/122—1 through 122—8 (West 1992)) in a noncapital case. Accordingly, I dissent.

The defendant seeks to establish his right to a new trial under the Post-Conviction Hearing Act by alleging newly discovered evidence of his innocence of the murder for which he was convicted 14 years ago, in 1982. To be eligible for post-conviction relief, a defendant must establish a constitutional violation in the proceedings that resulted in his conviction. 725 ILCS 5/122—1 (West 1992); *People v. Brown*, 169 Ill. 2d 94, 101-03 (1995); *People v. Guest*, 166 Ill. 2d 381, 389 (1995). The majority correctly concludes that the defendant's claim of actual innocence does not implicate any federal constitutional rights. See *Herrera v. Collins*, 506 U.S. 390, 122 L. Ed. 2d 203, 113 S. Ct. 853 (1993); *Townsend v. Sain*, 372 U.S. 293, 9 L. Ed. 2d 770, 83 S. Ct. 745 (1963). The majority finds, however, that the same claim implicates the due process guarantee of the Illinois Constitution (Ill. Const.

1970, art. I, § 2) and thus may be pursued under our state's Post-Conviction Hearing Act.

The majority fails to explain, as an initial matter, why the due process clause of the Illinois Constitution should be interpreted differently from the due process clause of the United States Constitution. Invoking the flawed decision in *People v. McCauley*, 163 Ill. 2d 414 (1994), the majority simply declares that we are under no obligation to construe provisions of the Illinois Constitution in "lockstep" with the United States Supreme Court's interpretation of corresponding provisions of the United States Constitution. 171 Ill. 2d at 485. Before adopting an interpretation that varies from one given by the United States Supreme Court, however, we should seek some legitimate, objective ground for distinguishing the language of the state constitution from that of the United States Constitution. As the court explained in *People v. Tisler*, 103 Ill. 2d 226, 245 (1984), in deciding whether the search and seizure provisions of the Illinois Constitution should be interpreted more broadly than the fourth amendment of the United States Constitution:

"We must find in the language of our constitution, or in the debates and the committee reports of the constitutional convention, something which will indicate that the provisions of our constitution are intended to be construed differently than are similar provisions in the Federal Constitution, after which they are patterned."

Although the approach exemplified in *Tisler* has not been without exception, it represents the better analysis, in my view, and one that I would continue to adhere to. In the present case, the majority acknowledges that the language of the federal and state due process guarantees is identical and, further, that there is nothing in the debates of the 1970 state constitutional convention that suggests that the drafters intended the Illinois provision to mean something different from its

federal counterpart. 171 Ill. 2d at 485. The majority nonetheless concludes that the due process clause of the Illinois Constitution requires a different and more expansive meaning than the same language commands under the federal constitution, and that notions of procedural and substantive due process separately sustain the defendant's action here. Neither ground is persuasive.

Illinois law affords convicted defendants a number of opportunities to raise allegations of newly discovered evidence of innocence; the availability of these forms of relief refutes the majority's conclusion that procedural due process compels a post-conviction remedy for the same claim. First, a defendant may present such evidence in a motion for a new trial, filed within 30 days of the verdict or finding of guilty. 725 ILCS 5/116—1 (West 1994). If the defendant discovers the evidence too late to satisfy the preceding time limit, relief may be available under section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 1994)). While at one time it was the rule that claims of newly discovered evidence could not be raised in a petition under section 72 of the Civil Practice Act, which was the statutory predecessor to section 2—1401 (*People v. Colletti*, 48 Ill. 2d 135, 137 (1971)), more recent cases have recognized that such claims may be prosecuted under section 2—1401. *People v. Sanchez*, 131 Ill. 2d 417, 419-20 (1989); see *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 283-84 (1982). Notably, the two-year time limit for bringing actions under section 2—1401 corresponds to the two-year limit imposed by Rule 33 of the Federal Rules of Criminal Procedure, which provides the sole means for bringing claims of newly discovered evidence of innocence by convicted defendants in the federal system. *Guinan v. United States*, 6 F.3d 468, 470-71 (7th Cir. 1993).

The measures available in Illinois for raising claims

of newly discovered evidence of innocence are at least as extensive as those that may be pursued under Texas law, which the Supreme Court approved in *Herrera v. Collins*, 506 U.S. 390, 122 L. Ed. 2d 203, 113 S. Ct. 853 (1993). Because Illinois law provides convicted defendants with sufficient means by which to raise claims of actual innocence, I do not agree with the majority that considerations of procedural due process mandate an additional remedy under the Post-Conviction Hearing Act.

As an alternative basis for today's holding, the majority concludes that principles of substantive due process also compel recognition of the defendant's claim. This further rationale is equally unpersuasive, however. A defendant seeking to assert a claim of actual innocence in a post-conviction petition has, by definition, been convicted of the charge following a trial or a guilty plea. As the *Herrera* Court noted in rejecting a similar argument by a capital defendant, "The question before us *** is not whether due process prohibits the execution of an innocent person, but rather whether it entitles petitioner to judicial review of his 'actual innocence' claim. This issue is properly analyzed only in terms of procedural due process." *Herrera*, 506 U.S. at 407 n.6, 122 L. Ed. 2d at 221 n.6, 113 S. Ct. at 864 n.6.

In opposition to *Herrera*'s analysis, the majority asserts that the "legal construct" of a convicted defendant's guilt becomes weaker as the showing of actual innocence grows stronger. 171 Ill. 2d at 488. Although that observation has some theoretical appeal, it slights the role of the trial in our system of criminal justice. At the time a person files a post-conviction petition, he stands before the court, and society, as a convicted defendant, having been found guilty following a trial or guilty plea at which, presumably, all constitutional rights were honored. I do not believe that the legal sig-

nificance of that event waxes or wanes depending on the strength of a subsequent showing of actual innocence. Given the passage of time, and the fading of memories, there can certainly be no assurance that an adjudication made following a new trial would be any more reliable than the adjudication of the original proceeding, which produced the defendant's conviction. *Herrera*, 506 U.S. at 403-05, 122 L. Ed. 2d at 218-19, 113 S. Ct. at 862.

A defendant who cannot obtain relief in a motion for new trial or in a petition under section 2—1401 of the Code of Civil Procedure does not lack all recourse. In Illinois, a convicted defendant who wishes to raise a claim of newly discovered evidence outside the preceding time limits may submit a petition for executive clemency. See Ill. Const. 1970, art. V, § 12; 730 ILCS 5/3—3—13 (West 1994). Clemency "is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted." *Herrera*, 506 U.S. at 412, 122 L. Ed. 2d at 224, 113 S. Ct. at 866. The availability of this additional avenue of relief should not be ignored.

Finally, I would note that the out-of-state authorities cited by the majority in support of today's decision are fundamentally different from the case at bar. 171 Ill. 2d at 489. The present appeal arises from a petition filed under our state's Post-Conviction Hearing Act by a defendant who was sentenced to imprisonment for his offense. The cases cited by the majority either involve capital defendants or were maintained under statutes that do not expressly require a constitutional violation as a predicate for relief. *In re Clark*, 5 Cal. 4th 750, 855 P.2d 729, 21 Cal. Rptr. 509 (1993), and *State ex rel. Holmes v. Court of Appeals, 3rd District*, 885 S.W.2d 389 (Tex. Crim. App. 1994), two of the decisions cited by the majority, were both capital cases. The distinction between capital and non-capital sentences has been considered important by some in determining whether

to allow post-conviction relief for claims of newly discovered evidence of innocence. See *Herrera*, 506 U.S. at 419-21, 122 L. Ed. 2d at 228-30, 113 S. Ct. at 870-71 (O'Connor, J., concurring). Because this defendant was not sentenced to death for the underlying conviction, we need not determine here whether a different rule should apply to capital defendants.

The state statutes in the two other cases cited by the majority did not require allegations of constitutional violations, unlike the Illinois provision at issue here. In *Summerville v. Warden, State Prison*, 229 Conn. 397, 641 A.2d 1356 (1994), the Connecticut *habeas corpus* statute directed the court to dispose of the case " 'as law and justice requires.' " *Summerville*, 229 Conn. at 422, 641 A.2d at 1369, quoting Conn. Gen. Stat. § 52—470(a) (West 1991). To gain a new trial under that provision, the defendant needed to show only that he was " 'burdened by an unreliable conviction.' " *Summerville*, 229 Conn. at 419, 641 A.2d at 1367, quoting *Bunkley v. Commissioner of Corrections*, 222 Conn. 444, 460-61, 610 A.2d 598, 607 (1942). Similarly, the Florida *habeas* statute involved in *Jones v. State*, 591 So. 2d 911 (Fla. 1991), required the defendant to establish only that " 'if the matter shown had been before the trial court when judgment was entered, the court would have been precluded from entering the judgment.' " *Jones*, 591 So. 2d at 915, quoting *Russ v. State*, 95 So. 2d 594, 597 (Fla. 1957). In contrast to the Connecticut and Florida statutes, our state's Post-Conviction Hearing Act expressly limits the availability of relief to constitutional violations.

A number of questions remain in the wake of the majority's holding in this case. It is difficult to reconcile the result in the present appeal with our decision in *People v. Brown*, 169 Ill. 2d 94 (1995), which recently reaffirmed the rule that an allegation of perjury does not raise a constitutional claim in the absence of knowledge

of the false testimony by the prosecution. In addition, today's decision, unless otherwise limited, paradoxically will make relief more readily available when the claim of newly discovered evidence of innocence is raised in a post-conviction petition than when it is raised in a motion for a new trial. In a motion for a new trial, a defendant must show diligence in obtaining the new evidence in addition to demonstrating its conclusive character. See *People v. Molstad*, 101 Ill. 2d 128, 134-36 (1984); *People v. Haun*, 221 Ill. App. 3d 164, 175 (1991). Under today's decision, however, a defendant who raises the same claim in a post-conviction petition may apparently obtain relief by establishing the material, noncumulative, and conclusive character of the new evidence, without regard to his diligence in obtaining it.

In sum, unlike the majority, I do not believe that the Illinois Constitution provides greater due process protection in this context than does the United States Constitution, and thus I do not agree that the present defendant's claim represents a ground for post-conviction relief.

CHIEF JUSTICE BILANDIC joins in this dissent.

**Dissenting Opinion Upon Denial of Rehearing**

CHIEF JUSTICE BILANDIC, dissenting:

I do not agree with the majority's recognition of this newly found constitutional right for the reasons stated in Justice Miller's dissent. I write separately today, however, to focus on an equally important issue that has been overlooked by my colleagues: What standard for relief should apply to a post-conviction petitioner raising a freestanding claim of actual innocence based on newly discovered evidence?

Without any analysis, the majority applies the standard applicable to a defendant's post-trial motion for a

new trial: *i.e.*, the newly discovered evidence must be "new, material, noncumulative and *** ' "of such conclusive character" ' as would ' "probably change the result on retrial." ' " 171 Ill. 2d at 489. The majority then awards the defendant a new trial in which he can present his newly discovered evidence, the testimony of Jacqueline Martin.

This standard is not appropriate for analyzing post-conviction petitioners' claims of actual innocence for many reasons. The standard (1) does not comport with the rationale underlying the majority's recognition of this due process right; (2) wrongly cloaks the already-convicted defendant with a new presumption of innocence; (3) gives no consideration to the need for finality in criminal proceedings; and (4) inappropriately requires a new trial, which may take place decades after the crime and original trial. Also, the standard is not consistent with that applied in other jurisdictions.

The majority relies extensively on Justice Blackmun's dissent in *Herrera v. Collins*, 506 U.S. 390, 122 L. Ed. 2d 203, 113 S. Ct. 853 (1993), in recognizing this due process right, yet inexplicably fails to adopt his recommended standard for relief. The majority explains the rationale underlying its holding as follows:

> "The [United States] Supreme Court rejected substantive due process as means to recognize freestanding innocence claims because of the idea that a person convicted in a constitutionally fair trial must be viewed as guilty. That made it impossible for such a person to claim that he, an innocent person, was unfairly convicted.
>
> We think that the Court overlooked that a 'truly persuasive demonstration of innocence' would, in hindsight, undermine the legal construct precluding a substantive due process analysis. The stronger the claim—the more likely it is that a convicted person is actually innocent—the weaker is the legal construct dictating that the person be viewed as guilty. A 'truly persuasive demonstration of innocence' would effectively reduce the idea

to legal fiction. At the point where the construct falls apart, application of substantive due process principles, as Justice Blackmun favored, is invited." 171 Ill. 2d at 488. Like Justice Blackmun, the majority states that a " 'truly persuasive demonstration of innocence' " is required to overcome the strong presumption that the conviction obtained in the first trial is valid. 171 Ill. 2d at 488, quoting *Herrera*, 506 U.S. at 441, 122 L. Ed. 2d at 243, 113 S. Ct. at 882 (Blackmun, J., dissenting, joined by Stevens and Souter, JJ.). Unlike Justice Blackmun, however, the majority applies a standard that does not require the defendant to make a truly persuasive demonstration of innocence. The majority's standard entitles the defendant to a new trial if the newly discovered evidence of innocence merely will "probably change the result on retrial." 171 Ill. 2d at 489. Consequently, the majority's standard is wholly inconsistent with the rationale underlying its opinion.

Justice Blackmun recommended a consistent standard. He would place the burden of proof on the defendant to make a truly persuasive demonstration of his actual innocence. *Herrera*, 506 U.S. at 442-43, 122 L. Ed. 2d at 243-44, 113 S. Ct. at 882-83 (Blackmun, J., dissenting, joined by Stevens and Souter, JJ.). Justice Blackmun explicitly rejected, as too lenient, standards even more stringent than the majority's standard. *Herrera*, 506 U.S. at 442-43, 122 L. Ed. 2d at 234-44, 113 S. Ct. at 882-83 (Blackmun, J., dissenting, joined by Stevens and Souter, JJ.). In doing so, he explained:

"I think the standard for relief on the merits of an actual-innocence claim must be higher ***. I would hold that, to obtain relief on a claim of actual innocence, the petitioner must show that he probably is innocent. This standard is supported by several considerations. First, new evidence of innocence may be discovered long after the defendant's conviction. Given the passage of time, it may be difficult for the State to retry a defendant who obtains relief from his conviction or sentence on an actual-

innocence claim. The actual-innocence proceeding thus may constitute the final word on whether the defendant may be punished. In light of this fact, an otherwise constitutionally valid conviction or sentence should not be set aside lightly. Second, conviction after a constitutionally adequate trial strips the defendant of the presumption of innocence. The government bears the burden of proving the defendant's guilt beyond a reasonable doubt [citations], but once the government has done so, the burden of proving innocence must shift to the convicted defendant. *** When a defendant seeks to challenge the determination of guilt after he has been validly convicted and sentenced, it is fair to place on him the burden of proving his innocence, not just raising doubt about his guilt." *Herrera*, 506 U.S. at 442-43, 122 L. Ed. 2d at 244, 113 S. Ct. at 882-83 (Blackmun, J., dissenting, joined by Stevens and Souter, JJ.).

Justice Blackmun therefore recognized that a proper standard for relief would be consistent with the rationale underlying this due process right. Unfortunately, the majority's standard fails this most basic test.

The second problem with the majority's standard is that it allows the presumption of innocence to survive a constitutionally valid conviction. This happens because the defendant is awarded a new trial in which the State will again bear the burden of proving the defendant's guilt beyond a reasonable doubt. This result is not acceptable. An appropriate standard would recognize that a valid conviction strips the defendant of the presumption of innocence. *Herrera*, 506 U.S. at 443, 122 L. Ed. 2d at 244, 113 S. Ct. at 882-83 (Blackmun, J., dissenting, joined by Stevens and Souter, JJ.). Accordingly, the defendant should bear the burden of proving his actual innocence.

Third, the majority's standard fails to give due consideration to society's interests in the finality of criminal proceedings. An appropriate standard would take into account the passage of time and would recognize

that it becomes substantially more difficult for the State to obtain convictions once memories have faded and evidence has disappeared. *Herrera,* 506 U.S. at 442-43, 122 L. Ed. 2d at 244, 113 S. Ct. at 882 (Blackmun, J., dissenting, joined by Stevens and Souter, JJ.).

Finally, the majority's standard incorrectly relies on a retrial to determine whether the defendant is innocent. This procedure is seriously flawed. Awarding a new trial in this context unjustly places the burden of proof on the State to show, all over again, that the defendant is guilty beyond a reasonable doubt. Couple this with the advantage a defendant will gain by being retried many years after the crime and original trial (here, *16 years*) and the defendant's enviable position becomes apparent. Although once validly convicted, the defendant now need only raise a reasonable doubt of his guilt in order to be released. Actually guilty defendants may succeed in gaining their freedom under the majority's too-lenient standard.

Justice Blackmun suggested a better procedure than retrying the defendant. He would hold an actual-innocence hearing, in which the deciding court would weigh the newly discovered evidence of actual innocence in favor of the defendant against the evidence of his guilt as presented at the original trial. *Herrera,* 506 U.S. at 443-44, 122 L. Ed. 2d at 244-45, 113 S. Ct. at 883 (Blackmun, J., dissenting, joined by Stevens and Souter, JJ.). As compared to new trials held decades later, such a procedure would produce a highly reliable result. It would also save the judicial system the expense of a new trial.

Given the many serious problems with the majority's standard, it is not surprising that other jurisdictions have explicitly rejected it. See *Summerville v. Warden, State Prison,* 299 Conn. 397, 429, 641 A.2d 1356, 1372 (1994) (explaining in great detail why the "wholesale

transplanting of the petition for new trial standard to a habeas petition based on a claim of actual innocence would not give due respect to [society's interests]"); *In re Clark*, 5 Cal. 4th 750, 798 n.33, 855 P.2d 729, 761 n.33, 21 Cal. Rptr. 2d 509, 541 n.33 (1993); *State ex rel. Holmes v. Court of Appeals*, 885 S.W.2d 389, 399 (Tex. Crim. App. 1994) (adopting a threshold standard in addition to the standard recommended by Justice White in his concurrence). This court should not have adopted it either. I urge my fellow justices to rectify this grave error as quickly as possible.

JUSTICE MILLER joins in this dissent.