2026 IL App (2d) 250251-U
No. 2-25-0251
Order filed March 23, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v. ALEXANDER M. SANCHEZ, Defendant-Appellant.

Appeal from the Circuit Court of Lake County.
Honorable Victoria A. Rossetti, Judge, Presiding.
No. 22-CF-1891

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice Kennedy and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: Because this appeal presents no issue of arguable merit, we grant appellate counsel's motion to withdraw, and we affirm the trial court's judgment dismissing defendant's postconviction petition.

¶ 2    Defendant, Alexander M. Sanchez, appeals from an order of the circuit court of Lake County summarily dismissing his *pro se* petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)).  The Office of the State Appellate Defender (OSAD) was appointed to represent defendant but now moves to withdraw, claiming that there are no arguably meritorious issues for appeal.  We agree, allow OSAD to withdraw, and affirm the dismissal.

¶ 3                                  I. BACKGROUND

¶ 4    Following a bench trial, defendant was convicted of aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2020)).  At trial, Fred Linares testified that he was married to defendant's

mother, Eunice Zavala. Linares, Zavala, and defendant shared a home. On November 12, 2022, they visited a quinceañera at a neighbor's home. They had helped set up the party and brought certain items, including a blow dryer, with them. When they returned to their own home, Zavala was upset at Linares because he had been drinking and flirting with the neighbor's daughter. Defendant and Linares began to argue. Linares was unloading some items from the car. When he picked up the blow dryer, defendant said, " 'go ahead and grab a weapon.' " Defendant then hit Linares, causing him to stumble, and charged at him. It felt like defendant was punching him. Defendant and Zavala went into the house, and Linares called the police. Linares discovered that he was bleeding, and after the police arrived, he realized that he had been stabbed several times.

¶ 5    Pursuant to pretrial order *in limine* excerpts of security camera footage from Zavala's home on the night of the incident were admitted into evidence. In one excerpt, defendant told Zavala that he hit Linares with a water bottle. In other excerpts, defendant stated that he hit Linares because Linares spit in his face. Two Round Lake Beach police officers responded to the incident. One of the officers testified that Linares was bleeding heavily. The other officer testified that he spoke with defendant, who indicated that he might have a box cutter (which he used at work) in his pocket. The officer did not find a box cutter on defendant's person. However, a box cutter was recovered at the scene. While paramedics were attending to Linares, the had to cut a belt loop on his pants to remove a knife that was clipped to the belt loop.

¶ 6    Scott Miller, a trauma surgeon, testified as an occurrence witness and as an expert in the field of trauma surgery. Miller treated Linares for his injuries. According to Miller, Linares sustained multiple lacerations. Miller's medical opinion was that the lacerations were caused by some type of blade. Miller testified that it was unlikely that the wounds were self-inflicted, but he could not form a medical opinion to that effect.

¶ 7    Zavala testified for the defense that Linares "drank quite a bit" of "hard liquor" at the quinceañera. Asked if Linares was carrying any knives, Zavala answered affirmatively. Linares customarily carried a minimum of two to three knives. Zavala observed him using knives to cut limes at the quinceañera. When Zavala, Linares and defendant were unloading their vehicle after returning from the quinceañera, Linares was arguing. Zavala felt something hit the back of her head. When she turned around, she noticed that defendant had some kind of strap on his hand. She saw something "flying" at Linares, who was "leaping" at defendant. She did not see either a knife or a box cutter, or any other weapon, in defendant's hand. She also never saw defendant punch Linares and she saw no one get cut or slashed.

¶ 8    Defendant testified that when he, Linares, and Zavala returned home from the quinceañera, Linares "charged" at defendant. Defendant responded by hitting Linares with a plastic water bottle. Linares then spat on defendant and threatened to beat him, at which point, they began "grappling." Defendant did not have a sharp object in his hand during the fight. He denied either punching or cutting Linares.

¶ 9    As noted, the trial court found defendant guilty of aggravated domestic battery. The record on appeal contains a transcript of a hearing held prior to sentencing in which the trial court granted Linares's *ex parte* petition for an emergency order of protection pursuant to section 112A-17.5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/112A-17.5 (West 2024)). On a later date, the trial court sentenced defendant to a 48-month term of intensive probation, a 180-day jail term, and an 18-month term of periodic imprisonment under the sheriff's electronic home monitoring program. In addition, the trial court entered a final order of protection in favor or Linares.

¶ 10    We affirmed defendant's conviction on direct appeal. *People v. Sanchez*, 2024 IL App (2d) 230461-U. Defendant subsequently filed his *pro* se petition under the Act, raising the following

claims: (1) the State failed to prove defendant inflicted the injuries that Linares suffered; (2) The evidence against defendant included inadmissible hearsay; (3) the State created a "false narrative" portraying defendant as quick to anger; (4) the State failed to disclose various items of material evidence as required by *Brady v. Maryland*, 373 U.S. 83, 87 (1963); (5) the State "downplayed" the significance of Linares's high blood glucose level at the time of the incident "thereby misrepresenting the true extent of his impaired state"; (6) defendant signed a document under duress permitting the State to admit only incriminating portions of the home surveillance video; (7) the State omitted key facts, thereby misleading the trial court about Linares's physical condition at the time of the incident; (8) the State did not disclose certain evidence to its expert witness; (9) the trial court erred in qualifying one of the State's witnesses as an expert in traumatic injuries; (10) defense counsel neglected to move to suppress statements made by defendant to law enforcement officials; (11) defense counsel forced defendant to sign a document under duress; (12) defense counsel failed to obtain and investigate certain evidence and to prepare for cross-examination of the State's expert witness; and (13) the trial court erred in entering an *ex parte* order of protection against him. As noted, the trial court summarily dismissed the petition, defendant brought this appeal, and OSAD was appointed to represent him.

¶ 11     Per *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and *People v. Lee*, 251 Ill. App. 3d 63 (1993), the appellate defender assigned to represent defendant in this appeal moves to withdraw as counsel. In her motion, counsel states that she read the record and found no issue of arguable merit. Counsel further states that she advised defendant of her opinion. Counsel supports her motion with a memorandum of law providing a statement of facts, a list of potential issues, and arguments as to why those issues lack arguable merit. We advised defendant he had 30 days to respond to the motion. Defendant did not file a response and the time for doing so has lapsed.

¶ 12                                    II. ANALYSIS

¶ 13    Counsel advises us that she considered whether to raise the following issues on appeal: (1) that the summary dismissal of the petition was procedurally improper and (2) that defendant's petition was not frivolous or patently without merit. Counsel concluded that neither issue was arguably meritorious. We agree.

¶ 14    The Act "provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated in [his or her] original trial or sentencing hearing." *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). Proceedings under the Act are divided into three stages. *People v. Janusz*, 2024 IL App (2d) 220348, ¶ 21. At the first stage, the trial court will summarily dismiss a petition if it is frivolous or patently without merit, *i.e.* if it has no arguable basis in fact or law. *Id.* Section 122-2 of the Act (725 ILCS 5/122-2 (West 2024) provides that a petition seeking relief "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." The failure to comply with this requirement is grounds for summary dismissal of the petition. *People v. Delton*, 227 Ill. 2d 247, 254-55 (2008). Moreover, "[i]ssues that were raised and decided on direct appeal are barred by the doctrine of *res judicata*, and issues that could have been presented on direct appeal, but were not, are forfeited." *People v. Turner*, 2012 IL App (2d) 100819, ¶ 51. Forfeited postconviction claims and those barred by *res judicata* considered frivolous or patently without merit. *People v. Blair*, 215 Ill. 2d 427, 445 (2005).

¶ 15    We first consider whether the summary dismissal of defendant's petition was procedurally proper. The procedural constraints on summary dismissal of a postconviction petition are that the summary dismissal must occur within 90 days of the date the petition was filed (725 ILCS 5/122-21(a)(2) (West 2024)) and the determination to summarily dismiss the petition must be made

- 5 -

without input from the State (*People v. Gaultney*, 174 Ill. 2d 410, 419 (1996)). The record shows that the trial court summarily dismissed the petition within the 90-day period and received no input from the State. Thus, there is no arguably meritorious basis for a procedural challenge to the summary dismissal of defendant's petition.

¶ 16 We next consider whether defendant raised any claims that were not subject to summary dismissal as frivolous or patently without merit. We begin with defendant's claims that: the State failed to prove that he inflicted the injuries that Linares suffered; the State elicited improper hearsay testimony from a police officer; and the trial court erred in qualifying Miller as an expert in traumatic injuries. Defendant could have raised these issues on direct appeal. Because he failed to do so, the claims are forfeited.

¶ 17 We likewise conclude that defendant's claim that the State created a "false narrative" portraying him a "quick to anger" was frivolous or patently without merit. According to defendant, there was no evidence supporting the State's "narrative." If so, any misconduct on the State's part could have been raised on direct appeal, and the failure to do so forfeited the issue. Although defendant asserted that "[n]ew evidence from court-mandated domestic violence and anger management classes further disproves [the State's] narrative," the discovery of new evidence that might have been presented at trial does not implicate a constitutional right unless the new evidence establishes a claim of actual innocence, such that the conviction violates the right to substantive due process under our state constitution. *People v. Washington*, 171 Ill. 2d 475 (1996). The evidence defendant cites does not rise to that level. Even if evidence related to domestic violence and anger management classes could be a basis for postconviction relief, his claim would fail because defendant did not attach the evidence to his petition or explain why he was unable to do so.

¶ 18    We next consider defendant's claims that: he was deprived of due process of law because, in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the State failed to disclose certain allegedly material exculpatory evidence; the prosecutor "downplayed" the significance of the victim's high blood glucose level at the time of the incident "thereby misrepresenting the true extent of his impaired state"; defendant signed a document under duress permitting the State to admit only incriminating portions of home surveillance video; trial counsel forced defendant to sign that document; the State did not disclose certain evidence to its expert witness that might have affected the expert's opinion; trial counsel failed to properly obtain and investigate certain evidence and to prepare for cross-examination of the State's expert; and trial counsel failed to move to suppress defendant's statements.    Defendant failed either to submit evidence substantiating these claims with his petition or to explain his inability to do so.  Accordingly, none of these claims warranted advancing defendant's petition beyond the first stage of the proceedings.

¶ 19    Next, we consider defendant's claim that the prosecutor omitted "key facts," thereby misleading the trial court about the victim's physical condition at the time of the incident. According to the petition the victim was 6 feet tall, and he weighed  235 pounds at the time and was extremely strong at the time of the incident, but "appeared significantly different [at trial], having lost weight and grown a long beard, giving him a sickly appearance, which did not reflect his physical condition on the night of the incident."  We fail to see how the omission of these "facts" could violate defendant's constitutional rights.  Although a conviction obtained by "a deliberate deception of court and jury by the presentation of testimony known to be perjured" (*Mooney v. Holohan*, 294 U.S. 103, 112 (1935)), that did not occur here.  It does not appear that the trial court was under the impression that the victim's physical condition at the time of trial was the same as at the time of the incident roughly six months earlier.  Even if the record supported

defendant's claim that the victim looked "sickly" at trial, his physical appearance was not evidence of his condition at the time of the incident. The notion that simply calling the victim to testify was itself an act of deception is untenable.

¶ 20    Finally, defendant's claim that the trial court erroneously entered an *ex parte* order of protection against him is moot because the *ex parte* order was superseded by a final order of protection entered at a proceeding at which defendant was present and had the opportunity to be heard.

¶ 21                          III. CONCLUSION

¶ 22    For the reasons stated, we grant counsel's motion to withdraw and affirm the judgment of the circuit court of Lake County.

¶ 23    Affirmed.